UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NOTHERN DIVISION
AT COVINGTON

CRIMINAL ACTION NO. 25-27-DLB-CJS

UNITED STATES OF AMERICA                                                     PLAINTIFF

v.                        **MEMORANDUM ORDER**
                          **ADOPTING REPORT AND RECOMMENDATION**

**PELE CHANTHALITH and**                                      **DEFENDANTS**
**OUDONE THENGKAMP**

\* \* \* \* \* \* \* \* \* \* \* \*

**I.   INTRODUCTION**

This matter is before the Court upon the August 29, 2025, Report and Recommendation ("R&R") of Magistrate Judge Candace J. Smith (Doc. # 37) wherein she recommends that the Court deny Defendants Pele Chanthalith's and Oudone Thengkamp's Motions to Suppress (Docs. # 17 and 18). Defendants having filed Objections (Docs. # 39 and 40) and the United States having filed its Response (Doc. # 41), the R&R is ripe for the Court's consideration. For the following reasons, Defendants' Objections are **overruled**, the R&R is **adopted** as the Opinion of the Court, and the Motions to Suppress are **denied**

**II.   FACTUAL BACKGROUND**

On December 12, 2024, while stationary at a rest area on I-75 South, Boone County Deputy Teddy Melton observed a gray Nissan approach from the northbound

lanes.[1]  (Doc. # 37 at 2).  At the evidentiary hearing, Deputy Melton testified that upon observing the vehicle, he could not identify whether the passenger was properly restrained by his seat belt.  (*Id*.).  As a result, he left his position and began to follow the Nissan.  (*Id*.).  Once behind the Nissan, Deputy Melton followed the vehicle for two to three miles.  (*Id*.).  While following the vehicle, Deputy Melton was able to confirm the passenger was wearing a seatbelt; however, during the time when Deputy Melton was attempting to confirm whether the passenger was secure, he observed the Nissan crossing over the hash marks on either side of the lane several times.  (*Id*.).  Deputy Melton testified that, while still behind the vehicle, the Nissan attempted to change lanes from the center to the far-right lane.  (*Id*.).  As the Nissan began to change lanes, a car, already established in the far-right lane, was in the process of passing the Nissan.  (Id.).  Because the car had not sufficiently passed the Nissan before it attempted to change lanes, the driver of the Nissan had to use their brakes to avoid hitting the driver-side bumper of the passing car.  (*Id*.).  Immediately following this incident, Deputy Melton initiated a traffic stop.  (*Id*. at 3).

When Deputy Melton approached the vehicle, he explained to the driver, Defendant Thengkamp, that he had pulled them over due to various careless maneuvers.  (*Id*.).  Upon requesting Defendant Thengkamp's license, Deputy Melton observed him search through a black bag, but ultimately fail to produce his license.  (*Id*.).  At that point, Deputy Melton ordered Defendant Thengkamp to step out of the vehicle, and, with his consent, conducted a quick pat-down.  (*Id*.).  Deputy Melton then instructed Defendant

---

[1]      These facts are summarized from Magistrate Judge Candace J. Smith's Report and Recommendation (Doc. # 37), which summarized the facts from the transcript of the evidentiary hearing (Doc. # 33).

Thengkamp to sit in the passenger seat of the police cruiser. (*Id*.). Once inside Deputy Melton's cruiser, Defendant Thengkamp began rubbing his mouth, and explained that his tooth was falling out because of a cavity. (*Id*.). Deputy Melton then asked Defendant Thengkamp where he and Defendant Chanthalith were going, to which Thengkamp responded they were heading to his uncle's house in Tennessee. (*Id*.). Defendant Thengkamp also revealed that the Nissan that he had been driving was a rental and that he was not authorized to drive it. (*Id*. at 4). While still in the police cruiser, Deputy Melton discovered via the MDT system that Defendant Thengkamp had an outstanding warrant for an operating while impaired charge in Florida. (*Id*.).

At this point, Deputy Melton returned to the Nissan to question Defendant Chanthalith about the vehicle. (*Id*.) Defendant Chanthalith reported that he was the authorized driver of the Nissan, and that he and Defendant Thengkamp were heading back to Florida. (*Id*.). Defendant Chanthalith additionally revealed to Deputy Melton that the two had flown to Michigan, and from there were driving back to Florida. (*Id*.). At this point, Deputy Melton called for back-up. (*Id*.). Deputy Melton then returned to the police cruiser, where he asked Defendant Thengkamp more about the pair's travel plans. Defendant Thengkamp confirmed Defendant Chanthalith's story that the two had flown from Florida to Michigan with the intention to drive the rental car back to Florida. (*Id*.). Defendant Thengkamp produced no answer for why Defendant Chanthalith was unaware of the stop in Nashville. (*Id*.).

Following this interaction, Deputy Melton asked Defendant Thengkamp, multiple times, if he could search the vehicle. (*Id*. at 4-5). Each time, Defendant Thengkamp responded that the vehicle was not his. (*Id*. at 5). In response to the question of what in

3

the vehicle did belong to Defendant Thengkamp, he claimed only a sweater and cigarettes. (*Id*.). During this conversation, Deputy Melton discovered that Defendant Chanthalith also had a warrant out for his arrest, which was for drug trafficking in Michigan, and indicated that Chanthalith was armed and dangerous. (*Id*. at 4). Deputy Melton then proceeded to detain both the men so that he could conduct a dog sniff of the car.[2] The dog quickly alerted to the driver's side door of the Nissan. (*Id*.). Deputy Melton then advised Thengkamp of his Miranda rights and searched the vehicle and all belongings therein. (*Id*.). As a result of the search, Deputy Melton discovered a substance he believed to be methamphetamine. (*Id*.). Following this discovery, Defendants were arrested. (*Id*.).

On March 13, 2025, Defendants were charged for aiding and abetting with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Doc. # 1). On April 16, 2025, Defendants Chanthalith and Thengkamp filed their respective Motions to Suppress. (Docs. # 17 and 18). Defendants move for the suppression of any evidence obtained as a result of the traffic stop and subsequent search of the vehicle.[3] (Doc. # 17.). In support, Defendants submit that the traffic stop was illegal because it was a "pretextual stop without any factual basis to effectuate a legal automobile stop[.]" (*Id*. at 8). Defendants additionally argue that Deputy Melton did not have "reasonable suspicion of an ongoing crime" to initiate the traffic stop. (*Id*.). Moreover, Defendants argue that

---

[2]   Deputy Melton did not have to wait for a canine to arrive, as the dog was present with him during the duration of this traffic stop. (*Id*. at 5).

[3]   Defendant Thengkamp adopted and incorporated Defendant Chanthalith's Facts and Argument section. (Doc. # 18). For ease of reference, the Court will cite to Defendant Chanthalith's Motion (Doc. # 17).

4

even if the stop was lawful, Deputy Melton unreasonably prolonged the stop when he initiated the dog sniff. (*Id*. at 9).

On June 27, 2025, Magistrate Candace J. Smith held an evidentiary hearing on the Motion to Suppress. (Doc. # 30). Following the evidentiary hearing, Judge Smith ordered the parties to file post-hearing briefs. (*Id*.). The parties did so (Docs. # 34, 35, and 36). On August 29, 2025, Judge Smith issued her R&R recommending that Defendants' Motions to Suppress be denied. (Doc. # 37). Since then, Defendants filed their Objections (Docs. # 39 and 40), the United States filed its Response (Doc. # 41), and the R&R is now ripe for this Court's review.

### III. REPORT AND RECOMMENDATION

After summarizing the relevant factual background, Judge Smith addressed Defendants' arguments as follows. First, in addressing the issue of probable cause, Judge Smith noted that the Fourth Amendment provides, in pertinent part, that the "right of [the] people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." (Doc. # 37 at 6 (quoting US. Const. amend. IV)). Judge Smith further noted that officers may stop a vehicle "where the police have probable cause to believe that a traffic violation has occurred." (*Id*. at 7 (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996))). Here, Judge Smith determined that Deputy Melton had probable cause to believe Defendants committed a traffic violation— specifically, the numerous careless maneuvers in violation of Kentucky Revised Statute ("KRS") § 189.290. (*Id*. at 9). Defendants attempted to argue that the stop was pretextual, which Judge Smith addressed, stating that "even if Deputy Melton stopped the vehicle for other reasons, his subjective intent plays no role in the probable cause determination."

(*Id*. at 10).  Ultimately, because Deputy Melton observed Defendant Thengkamp cross over the hashmarks on either side of his lane multiple time, "[t]hat alone is enough to support a reasonable ground for belief." (*Id*.) (internal quotations omitted).  Accordingly, Judge Smith concluded that the traffic stop was supported by probable cause and was therefore constitutional. (*Id.*).

Next, Judge Smith addressed whether Deputy Melton unreasonably prolonged the traffic stop when he detained Defendants and conducted a dog sniff of the vehicle. (*Id*.).  Judge Smith noted that under Supreme Court precedent, "[t]he duration of an officer's inquiry is determined by the seizure's 'mission,' meaning 'to address the traffic violation that warranted the stop' and 'attend to related safety concerns[.]" (*Id*. (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015))).  Judge Smith further noted that a seizure may be extended if "something happened during the stop to cause the officer to have reasonable articulable suspicion that criminal activity is afoot." (*Id*. at 10-11 (quoting *United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012))).  Moreover, because Defendants were specifically arguing that the dog sniff was what unreasonably prolonged the traffic stop, Judge Smith noted the *Rodriguez* standard, which held that a dog sniff that occurs after the completion of a traffic stop unconstitutionally prolongs the traffic stop. (*Id*. at 11).  To determine whether the stop was unreasonably prolonged, Judge Smith applied the Sixth Circuit's standard in *United States v. Whitley*, 34 F.4th 522, 526-527 (6th Cir. 2022), which holds that where law enforcement abandons a traffic stop, an officer must do so on the basis of independent reasonable suspicion. (*Id*. at 12).

Applying the *Whitley* test, Judge Smith first concluded that "when [Deputy Melton] detained the men, [he] 'abandoned the traffic stop to investigate . . . drug related

6

activities,' and that 'investigation required a source of reasonable suspicion unrelated to the traffic stop.'" (*Id.* at 14 (quoting *Whitley*, 34 F.4th at 532)). Specifically, Judge Smith reasoned that Deputy Melton abandoned the traffic stop because "[a]t no point after completing that collateral investigation did he return to the traffic stop." (*Id.* at 13).

Because Judge Smith determined that Deputy Melton abandoned the traffic stop, the question turned to whether he had reasonable suspicion to do so. As Judge Smith noted, "'[r]easonable suspicion requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop.'" (*Id.* at 15 (quoting *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001). In analyzing whether Deputy Melton had reasonable suspicion, Judge Smith listed the eight facts which Deputy Melton relied upon to conduct the investigation:

> (1) Defendants gave inconsistent stories about their travel plans; (2) there was not enough luggage in the car for the trip from Michigan to Florida; (3) Defendants took a one-way flight to Michigan with a plan to return to Florida in a rental car; (4) Defendants had outstanding warrants, one of which was for drug trafficking; (5) Defendants were nervous during the traffic stop; (6) Defendant Thengkamp drove carelessly; (7) Defendant Thengkamp could not produce his driver's license; and (8) Defendant Thengkamp had an issue with his tooth.

(Doc. # 37 at 15-16). In her R&R, Judge Smith analyzed each fact independently and in totality, and found that "the totality of the events that transpired gave Deputy Melton reasonable suspicion to extend the traffic stop for a dog sniff". Therefore, Judge Smith found that Defendants "failed to demonstrate a violation of their rights under the Fourth Amendment" (*id.* at 18) and recommended that Defendants' Motions to Suppress be denied. (*Id.* 19).

7

## IV. ANALYSIS

### A. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition . . . of any motion." Under Federal Rule of Criminal Procedure 59(b)(1)(2), following a magistrate judge's recommended disposition, a party has fourteen days to file "specific written objections to the proposed findings and recommendations." The district judge is required to "consider de novo any objection to the magistrate judge's recommendation," and "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). Failure to object is considered waiver of the party's right to review. Fed. R. Crim. P. 59(b)(2).

The purpose of objections is to allow "the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985) (footnote omitted). Therefore, objections to the R&R must be specific—they may not be "vague, general, or conclusory . . . [as such objections are] tantamount to a complete failure to object." *Fields v. Lapeer 71-A District Court Clerk*, 2 F. App'x 481, 482-83 (6th Cir. 2001). "Moreover, 'an "objection" that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context.'" *United States v. Vanover*, No. 2:10-cr-14, 2017 WL 1356328, at *1 (E.D. Ky. Apr. 11, 2017) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004)).

8

**B.     Defendants' Objections**

Defendants filed their Objections to the R&R (Docs. # 39 and 40),[4] raising one main argument—that Deputy Melton did not have reasonable suspicion to extend the traffic stop for a dog sniff.  (Doc. # 39 at 2).  Specifically, Defendants argue that the eight facts considered in the reasonable suspicion analysis by Judge Smith were "either refuted by the record, are belied by the magistrate judge's findings and conclusions elsewhere in the [R&R], or carry little or no weight as a matter of law."  (*Id*. at 3).  The United States disagrees, arguing that Defendants' Objections "simply raise the same claims that were rejected in the [R&R] without offering any legal or factual basis in support of the objections."  (Doc. # 41 at 1).  Additionally, the United States argues that even if considered on the merits, Defendants' Objections must still be rejected because Deputy Melton had reasonable suspicion to conduct a dog sniff.  (*Id*. at 2).

Defendants object to Judge Smith's findings on three grounds: (1) the facts were refuted by the record; (2) the findings and conclusions were refuted by Judge Smith's own R&R; or (3) the facts carry little to no weight as a matter of law.   (Doc. # 39 at 3).  First, as to any of the facts Defendants believe were "refuted by the record," the Court declines to reevaluate Judge Smith's determination as to the factual basis for the dog sniff.

Second, as to findings and conclusions that were refuted by Judge Smith's own R&R, the Court notes that Defendants apply this argument mainly to the fact regarding inconsistent stories.  (*Id*. at 11-12).  However, Defendants misrepresent Judge Smith's conclusion.  Judge Smith did, in fact, acknowledge that the plans may not have been

---

[4]     Defendant Chanthalith adopted and incorporated Defendant Thengkamp's Objections. (Doc. # 40).  For ease of reference, the Court will cite to Defendant Thengkamp's Motion (Doc. # 39).

wholly inconsistent. (Doc. # 37 at 16). However, she did find that the plans were "likely dubious or vague." (*Id*.). To come to this conclusion, Judge Smith relied on the record, which reflected that Defendants were unable to answer basic questions about their plans such as where they would be stopping next, or why Defendant Thengkamp had little to no clothing,[5] or that they purchased a one-way ticket. (*Id*. at 16-17). That Defendants disagree that such facts lead to a conclusion of "vague" travel plans, without more, is insufficient to grant their objections.

Finally, Defendants argue that each fact carries little to no weight as a matter of law. (Doc. # 39 at 11-12). The Court finds this argument insufficient for two reasons. First, Defendants seem to be merely disagreeing with Judge Smith's conclusion that, in the aggregate, the facts appropriately lead to Deputy Melton having reasonable suspicion. (*See Id*.) ("The facts relied upon by the magistrate judge are each afforded little or no weight under the law, and do not give rise to reasonable suspicion under the 'totality of the circumstances' test."). However, they provide the Court with no legal basis as to why the facts could not, as a whole, amount to reasonable suspicion. Rather Defendants point only to each individual factor, arguing that separately, they carry little to no weight.

Additionally, even with regard to the fact-specific arguments, Defendants' Objections, in the Court's view, amount to nothing more than disagreement with Judge Smith, at best. For example, as to the one-way flight and rental car factor, Defendants argue that federal courts have recognized that a one-way flight is not a fact that gives rise

---

[5]  Defendants argue that the "paucity of luggage is refuted" because the body camera video shows a black backpack, clothing in the back seat, and two additional bags. (Doc. # 39 at 8). Defendant argues that "three pieces of luggage are certainly enough for a trip that was supposed to last just a few days." (*Id*.). However, Defendants seemingly omit Defendant Thengkamp's own statement to Deputy Melton that the only items he had with him were cigarettes and a sweater. (*See* Doc. # 37 at 5).

10

to reasonable suspicion. (Doc. # 39 at 8-9). In support, Defendants cite to a Tenth Circuit case. (*Id*. at 8-9). However, they fail to acknowledge the Sixth Circuit case Judge Smith cited, which discussed the fact that drug couriers commonly "rely on rental cars to move drugs across the country" with the intent of "reduc[ing] opportunities for police interdictions and increase the flow of drugs." (Doc. # 37 at 17) (citing *United States v. Jordan*, 100 F.4th 714, 719-20 (6th Cir. 2024)).

Another example includes the nervousness factor, which Defendants argue carries "negligible weight." (Doc. # 39 at 4). However, Judge Smith already addressed this in her R&R, acknowledging that that factor alone would not give rise to reasonable suspicion, but it does, nonetheless "weigh in favor of such a finding." (Doc. # 37 at 18). Defendants cite several Sixth Circuit cases, all of which are from 2012 or before, that acknowledge that nervousness does not hold much weight in the probable cause calculation. (Doc. # 39 at 3-4). However, they entirely disregard the 2016 Sixth Circuit case cited by Judge Smith which held that, while nervousness standing alone is insufficient, when looked at in the aggregate it is an appropriate factor to consider. *See United States v. Pacheco*, 841 F.3d 384, 393 (6th Cir. 2016) ("[W]hile we have cautioned against rely too heavily on nervousness as indicia of dangerousness, Pacheco's nervousness is another factor in the totality-of-the-circumstances analysis that supports a reasonable-suspicion finding.") Thus, in the Court's view, Defendants' Objections do nothing more than simply disagree with Judge Smith's conclusions.

As stated above, an objection that "state[s] a disagreement with a Magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *United States v. Shephard*, No. 09-81-

11

DLB-EBA, 2016 WL 9115464, at *1 (E.D. Ky. Sept. 18, 2016) (citing *VanDiver*, 304 F. Supp. 2d at 983).  Here, the Court finds that Defendants' objections disagree with Judge Smith's suggested resolution, offer some case law to support their agreement, but disregard the controlling Sixth Circuit case law cited by Judge Smith, and merely summarize what has been presented before.[6]  Therefore, Defendants' Objections are **overruled**.

**V.   CONCLUSION**

For the reasons stated herein, Defendant has failed to raise any meritorious legal objections to Judge Smith's Report and Recommendation.  Accordingly,

**IT IS ORDERED** as follows:

(1)   The Magistrate Judge's R&R (Doc. # 37) is **ADOPTED** as the **Opinion** of the Court;

(2)   Defendants' Objections (Docs. # 39 and 40) to the R&R are **OVERRULED**;

(3)   Defendants' Motions to Suppress (Docs. # 17 and 18) are **DENIED**; and

(4)   This matter is scheduled for a **Scheduling Conference** on Thursday, October 9, 2025 at 11:30 a.m. in Covington.

---

[6]   The Court notes that Defendants' Objections mirror their post-hearing brief.  Both the Objections and the post-hearing brief analyze each individual suspicion factor, arguing that they hold little to no weight.  For example, in their Motion to Suppress, Defendants argue that the Sixth Circuit held that nervousness was insufficient to establish reasonable suspicion.  (Doc. # 17 at 12).  Similarly, Defendants make that exact same argument, even citing to the exact same case, in both their supplemental brief and their Objections.  (*See* Docs. # 34 at 8 and 39 at 4).  The Court notes that it could deny Defendants' Objections for lack of merit on those grounds as well.

This 2nd day of October, 2025.



Signed By:
**David L. Bunning**  *DB*
Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Covington Criminal\2025\25-27 Order Adopting R&R .docx